IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

DR. GERSON JIMENEZ, as Medical Director of

Hospital Episcopal San Lucas Guayama,

**Third-Party Plaintiff,**

v.                                                      CIVIL NO. 11-1278 (JAG)

LIBERTY MUTUAL INSURANCE COMPANY,

**Third-Party Defendant.**

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is third-party defendant Liberty Mutual Insurance Company's ("Liberty") Motion for Summary Judgment, Docket No. 162; and third-party plaintiff Dr. Gerson Jimenez's ("Jimenez") Opposition, Docket No. 170. For the reasons outlined below, Liberty's Motion for Summary Judgment is GRANTED.

## BACKGROUND

On August 21, 2013, Jimenez filed a complaint against Liberty alleging breach of contract and bad faith (the "Third-Party Complaint"). Jimenez v. Liberty Mutual Ins. Co., No. 13-1640 (D.P.R. Aug. 21, 2013), Docket No. 1.[1] Specifically, the Third-Party Complaint alleges that Liberty breached the executive advantage policy issued to Hospital San Lucas Guayama (the "Policy") when it denied Jimenez —the hospital's Medical Director— coverage for the claims made against him by Joel Lind-Hernandez and Nilda Lind-Hernandez in the case at bar. Id. at 4-5. Liberty counters that the Policy's unambiguous language bars coverage because Joel Lind-

[1] Case No. 13-1640 was consolidated with the instant case on February 10, 2014. Docket No. 128.

Hernandez and Nilda Lind-Hernandez's claims were made outside the Policy Period. See, e.g., Jimenez v. Liberty Mutual Ins. Co., No. 13-1640 (D.P.R. Aug. 21, 2013), Docket No. 7.[2]

Succinctly, plaintiffs Joel Lind-Hernandez and Nilda Lind-Hernandez's case is a medical malpractice suit arising out of events that took place at Hospital San Lucas Guayama, also known as Hospital Cristo Redentor, between January 4 and January 7 of 2009. See Docket No. 1. According to their complaint, after developing various serious conditions, Joel Lind-Hernandez was taken to the hospital for emergency medical treatment. Id. at 3-4. There, because of the alleged negligence of several doctors and the hospital itself, Joel Lind-Hernandez suffered various complications and eventually had to get both of his legs amputated. Id. at 4-8.

Although the facts of the underlying malpractice case are not particularly complicated, through the course of the present litigation plaintiffs Joel Lind-Hernandez and Nilda Lind-Hernandez filed several amended complaints. The first one, dated March 21, 2011, put forth allegations only against various emergency-room doctors and the hospital (the "First Complaint"). See id. Jimenez was subsequently included as a defendant in this case with the filing of the Second Amended Complaint on April 23, 2012 (the "Amended Complaint"). Docket No. 39. It is precisely the timing of these two complaints what lies at the heart of the coverage dispute between Jimenez and Liberty.

## STANDARD OF LAW

A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is in genuine dispute if it could be resolved in favor of either

---

[2] Under the Policy, the Policy Period is November 30, 2011 through November 30, 2012. Docket No. 162-5 at 1.

party, and it is material if it potentially affects the outcome of the case. <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party . . . ." <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000) (citing <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306 (1st Cir. 1997)). The nonmovant must demonstrate "through submissions of evidentiary quality[] that a trial worthy issue persists." <u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted).

In evaluating a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

## ANALYSIS

Liberty's main argument against coverage is that the First Complaint and the Amended Complaint are based upon related facts. Docket No. 162 at 2. According to Liberty, the Policy provides that when there are various claims related to the same facts, the Policy treats them as a single claim first made on the date the earliest of them was made. <u>Id.</u> at 10-12.[3] Liberty contends that the earliest claim is the First Complaint, which was made outside the Policy Period. <u>Id.</u>

---

[3] The key provision of the Policy is Limit of Liability, which states that "[a]ll Claims arising from the same Wrongful Act or Interrelated Wrongful Acts shall be deemed one Claim [which, in turn,] shall be deemed first made on the date the earliest of such Claims is first made, regardless of whether such date is before or during the Policy Period." Docket No. 162-5 at 6-7. The definition of Wrongful Act and Interrelated Wrongful Acts will be provided below.

Therefore, there can be no coverage for any related claims, including those made against Jimenez in the Amended Complaint. Id. The Court wholly agrees with Liberty.

## I.   Interpretation of Insurance Contracts under Puerto Rico Law

Under the Puerto Rico Insurance Code, an insurance contract must be construed "according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to the policy." P.R. Laws Ann. tit. 26, § 1125; PFZ Props., Inc. v. Gen. Accident Ins. Co., 136 D.P.R. 881, 902 (P.R. 1994). A policy's terms must be given their common and general meaning, and any term having multiple meanings should be read so as to give it its intended effect. P.R. Laws Ann. tit. 31, § 3474; Guerrido Garcia v. UCB, 143 D.P.R. 337, 348 (1997). The Supreme Court of Puerto Rico has also explained that, although "[a]ny ambiguity must be resolved in favor of the insured," this "does not bind [] court[s] to construe in favor of the insured a clause that clearly and unambiguously favors the insurer in the controversy in question." Guerrido Garcia, 143 D.P.R. at 348. Against this background, the Court proceeds to discuss Liberty and Jimenez's arguments regarding coverage.

## II.   Interrelated Wrongful Acts

The Court will first address Liberty's argument that the allegations in the First Complaint and the Amended Complaint constitute Interrelated Wrongful Acts. The Policy defines Wrongful Act as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty, actually or alleged committed or attempted by the Insured Persons in their capacities as such . . . or, with respect to Insuring Agreement 1.3, by the Insured

Organization . . . ." Docket No. 162-5 at 12.[4] Interrelated Wrongful Acts, in turn, are "Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions, or causes." Id. at 10.

Jimenez argues that, pursuant to the Wrongful Act definition, "for an Act to be covered by the Policy, such Act had to be executed by the Insured Persons in their capacities as such." Docket No. 170 at 8 (internal quotation marks omitted). Therefore, according to Jimenez, there can be no Wrongful Acts committed by Hospital San Lucas Guayama and Hospital Cristo Redentor because these are not Insured Persons under the Policy. See id.[5] But Jimenez overlooks the fact that there is another clause at the end of the Wrongful Act definition, which provides that the actual or alleged act or omission could alternatively be committed, "with respect to Insuring Agreement 1.3, *by the Insured Organization.*" Docket No. 162-5 at 12 (emphasis added). It is undisputed that, under the Policy, the term Insured Organization includes both Hospital San Lucas Guayama and Hospital Cristo Redentor. Id. at 34. In view of the unambiguous language of the Policy, the allegations in the First Complaint against Insured Organizations Hospital San Lucas Guayama and Hospital Cristo Redentor fall squarely within the definition of Wrongful Act.

Having determined that the allegations in the First Complaint constitute a Wrongful Act under the Policy, the second question is whether the allegations in the First Complaint and

---

[4] The parties do not contest that the First Complaint or the Amended Complaint alleged "error[s], misstatement[s], misleading statement[s], act[s], omission[s], neglect, or breach[es] of duty." Therefore, there is no need for this Court to discuss the application of this particular requirement of the provision.

[5] Insured Person is defined as "(a) one or more natural persons who were, now are, or shall hereafter be duly elected, appointed or hired directors or officers of the Insured Organization . . .; (b) committee members (of a duly constituted Committee of the Organization), Employee or volunteer of the Organization; (c) the position of Counsel and Directors of Human Resources shall be included as part of the definition of Insured under the Policy." Docket No. 162-5 at 15.

the allegations against Jimenez in the Amended Complaint constitute Interrelated Wrongful Acts, therefore subject to the Limit of Liability provision.[6] The Court holds that they are, given that the allegations raised against Jimenez in the Amended Complaint share a common nexus with the allegations in the First Complaint, as required by the language of the Policy. See Docket No. 162-5 at 10. The Court agrees with Liberty that the First Complaint and the Amended Complaint are factually connected —that is, both filings relate to the events that transpired at Hospital San Lucas Guayama from January 4 through January 7 of 2009, where Joel Lind-Hernandez sought medical treatment and eventually lost his legs. See Docket No. 162 at 10-12; Docket No. 39. Jimenez counters that, because the allegations against him have to do with administrative procedures that necessarily took place before the January 2009 events,[7] the Court should conclude that the allegations against him and the allegations in the First Complaint are not Interrelated Wrongful Acts. Docket No. 170 at 8-9. But Jimenez misses the mark, given that the Policy by its terms does not require temporal proximity between Wrongful Acts for them to be considered Interrelated Wrongful Acts. On the contrary, the Interrelated Wrongful Acts definition uses broad language, requiring only "a common nexus [of] any fact, circumstance, situation, event, transaction, [etc.]" Docket No. 162-5 at 10. Neither does the Policy's language require that Interrelated Wrongful Acts be committed by a single actor. Therefore, that there are allegations against Jimenez as well as allegations against Hospital San Lucas Guayama and Hospital Cristo Redentor is immaterial for purposes of determining whether the First Complaint and the Amended Complaint involve Interrelated Wrongful Acts. In sum, because

---

[6] The parties do not dispute that the allegations against Jimenez in the Amended Complaint fall under the definition of Wrongful Act. Therefore, the Court assumes that they do.

[7] In Jimenez's own words, the allegations against him have to with "(1) initiat[ing] the process of appointing the medical personnel of the institution; (2) determin[ing] the requirements and competencies that the medical staff in the different departments must have; [and] (3) oversee[ing] and insur[ing] that the department chairman performs and complies with his duties to recommend medical staff criteria for clinical services, among others." Docket No. 170 at 9.

Civil No. 11-1278 (JAG)                                                                                      7

the allegations in the First Complaint and the Amended Complaint share as a common nexus

the events that took place at Hospital San Lucas Guayama in January 2009, the two complaints

involve Interrelated Wrongful Acts. As such, under the Limit of Liability provision they must be

considered a single Claim, first made on the date the earliest Claim was made. Docket No. 162-5

at 6-7.

### III.    First Made Claim

Because the First Complaint and the Amended Complaint allege Interrelated Wrongful

Acts, under the Limit of Liability provision they must be considered a single Claim, first made on

the date the earliest of them was made. Docket No. 162-5 at 7. For the provision to come into

operation, however, not only are the underlying allegations required to be Interrelated Wrongful

Acts under the Policy, but also the Interrelated Wrongful Acts must give rise to Claims. Id.

(emphasis added) ("All *Claims* arising from the same Wrongful Act or Interrelated Wrongful

Acts shall be deemed one Claim [which, in turn,] shall be deemed first made on the date the

earliest of such Claims is first made, regardless of whether such date is before or during the

Policy Period.").

On this issue, Jimenez argues that the First Complaint did not constitute a Claim under

the Policy because the First Complaint named only Insured Organizations and none of their

officers and directors. Docket No. 170 at 7. The Court disagrees. The Policy defines Claim as "(a)

a written demand for monetary or non-monetary or injunctive relief against an Insured Person

*or, with respect to Insuring Agreement 1.3, against the Insured Organization*; (b) a civil or criminal

proceeding or arbitration against an Insured Person *or, with respect to Insuring Agreement 1.3, against*

*the Insured Organization*; [etc.]" Docket No. 162-5 at 15 (emphasis added).[8] There is no question that the Policy by its clear language provides that an Insured Organization can be the subject of a Claim. And because the First Complaint named and put forth several allegations against Insured Organizations Hospital San Lucas Guayama and Hospital Cristo Redentor, Docket No. 1, the First Complaint unequivocally falls under the Policy's definition of Claim.

In a slightly different argument, Jimenez also contends that the First Complaint is not a Claim because it was not received by an Insured Person, and that the first Claim that was received by an Insured Person or an Executive Officer —Jimenez in his official capacity— was the Amended Complaint. Docket No. 170 at 6-11. Yet again, Jimenez misreads the language of the Policy. Under the Policy, "[a] Claim will be deemed first made on the date *an Insured* receives a written demand, complaint, indictment, notice of charges, or order of formal investigation." Docket No. 162-5 at 15 (emphasis added). Although Jimenez is right that the definition of Insured Person does not include Hospital San Lucas Guayama or Hospital Cristo Redentor, what the provision requires is that an Insured receive a written demand, not an Insured Person. Id. The definition of Insured includes "Insured Persons and, solely with respect to Insuring Agreements 1.2 and 1.3, the Insured Organization." Id. at 10. Accordingly, a Claim was first made when Insured Organizations Hospital San Lucas Guayama and Hospital Cristo Redentor received the First Complaint. This leads the Court to the final step of the analysis.

Since the First Complaint constitutes a Claim under the Policy, the remaining issue is determining when it was received by an Insured —in this case Hospital San Lucas Guayama or Hospital Cristo Redentor. Although Liberty argues that the Claim was first made on March 21, 2011, the day the First Complaint was filed, the Court disagrees. Docket No. 162 at 2, 10. By

---

[8] Insuring Agreement 1.3 provides that "[t]he Insurer shall pay on behalf of the Insured Organization all Loss which it shall become legally obligated to pay as a result of a Claim . . . first made during the Policy Period . . . against the Insured Organization for a Wrongful Act . . . ." Docket No. 162-5 at 13.

the Policy's terms, the relevant date is the date an Insured receives a complaint or demand. Docket No. 162-5 at 15. Therefore, a Claim was first made on the date Hospital Cristo Redentor and Hospital San Lucas Guayama were first served with process —that is, June 24, 2011. Docket No. 7. Because the Policy Period started on November 30, 2011, Docket No. 162-5 at 1, the Claim arising out of the First Complaint was made outside such period and is therefore not covered under the Policy. And because the Amended Complaint and the First Complaint alleged Interrelated Wrongful Acts, under Limit of Liability provision the Amended Complaint, including the allegations against Jimenez, must also fall outside the Policy's coverage. Therefore, the Court GRANTS summary judgment in favor of Liberty as a matter of law.

## CONCLUSION

In light of the foregoing, Liberty's Motion for Summary Judgment, Docket No. 162, is GRANTED.


IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2015.


<u>s/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge